# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### MAY SESSION, 1997

**FILED**

January 26, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9605-CC-00179 |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | MONTGOMERY COUNTY |
| VS. | ) | |
| | ) | HON. JAMES E. WALTON |
| QUINTON CAGE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Direct Appeal - Aggravated Rape- |
| | ) | Especially Aggravated Kidnapping) |

FOR THE APPELLANT:

JOHN E. HERBISON
2016 Eighth Avenue South
Nashville, TN 37204
(On Appeal)

COLLIER GOODLETT, JR.
Assistant Public Defender
109 S. Second Street
Clarksville, TN 37040
(At Trial)

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

EUGENE J. HONEA
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

JOHN CARNEY
District Attorney General

ARTHUR BEIBER
Assistant District Attorney
204 Franklin Street
Clarksville, TN 37040

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

On December 2, 1994, a Montgomery County jury convicted Appellant Quinton Cage of aggravated rape, especially aggravated kidnapping, aggravated robbery, attempted aggravated robbery, and reckless endangerment with a deadly weapon. After a sentencing hearing on January 13, 1995, Appellant received sentences of twenty-five years for aggravated rape, twenty years for especially aggravated kidnapping, eight years for aggravated robbery, three years for attempted aggravated robbery, and two years for reckless endangerment. The sentences for especially aggravated kidnapping, aggravated rape, aggravated robbery, and reckless endangerment were ordered to run consecutively and the sentence for attempted aggravated robbery was ordered to run concurrently with the other sentences. Appellant challenges both his convictions and his sentences, raising the following issues:

> 1) whether the charges against Appellant should have been dismissed or remanded to the juvenile court for failure to give timely written notice of the transfer hearing;
> 2) whether the territorial jurisdiction of the trial court was established at the acceptance hearing;
> 3) whether the indictment was sufficient to charge Appellant with attempted aggravated robbery;
> 4) whether the evidence was sufficient to convict Appellant of especially aggravated kidnapping and aggravated robbery;
> 5) whether the trial court properly denied Appellant's pre-trial motion for expert assistance;
> 6) whether the trial court properly quashed a defense subpoena for materials in the possession of the State's expert;
> 7) whether the trial court properly admitted DNA evidence;
> 8) whether Appellant's sentences are excessive; and
> 9) whether the trial court properly imposed consecutive sentences.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Rajohnah Stephanie Stuard testified that on April 1, 1994, she went to a retail store in Clarksville, Tennessee to do some shopping. When Stuard left the store and walked over to her 1993 Ford Explorer, Appellant approached her and ordered her to get into the vehicle. When Stuard asked whether he was serious, Appellant looked down at the gun in his hand and then looked back at Stuard and repeated his demand.

Stuard testified that after she and Appellant got into her vehicle, Appellant told her to drive to her bank and told her to pull up to the last stall. When Stuard pulled up to the stall, Appellant told her to write a check for $500. When Stuard began looking in her purse for her checkbook, Appellant stated, "Don't fuck with me" and Stuard replied, "I'm not fucking with you." Stuard then found her checkbook and wrote out the check. Stuard wrote the word "Help" at the bottom of the check so that someone in the bank would assist her.

Stuard testified that after she put the check in the "tube" and sent it to the bank, Appellant told her to drive away because she "probably wrote something on the check." Stuard then drove away and followed Appellant's instructions until she came to a barbeque pit in back of a white building. Stuard testified that during this drive, she asked Appellant whether he was going to rape or kill her. Appellant told her to "shut up" and stated that he was not going to kill her, but he was going to shoot her in the leg.

Stuard testified that after she drove behind the white building, Appellant ordered Stuard to get in the back seat of the vehicle and then he ordered her to undress. Stuard begged Appellant not to rape her, but Appellant repeated his demand that she undress. After Stuard took her clothes off, Appellant penetrated her vagina with his penis and then ejaculated. After Appellant had finished with her, Stuard grabbed her shirt and got in the front seat of the car. When Appellant asked where she was going, Stuard said that she did not know and she got out of the car. Appellant then told her to give him her money and her purse. Stuard then gave Appellant approximately $350 and the keys to her car. Stuard then grabbed the rest of her clothes and hid behind the barbeque pit until Appellant drove away in her vehicle. After Appellant left, Stuard ran to a house down the road where she was able to call "911." An ambulance responded to the call and took Stuard to the hospital.

Stuard testified that Appellant held a gun in his hand throughout the entire episode and that as he was raping her, she "could hear the metal hitting the side of [her] car." Stuard described the gun as a black automatic that had some scrapes on it. Stuard testified that she believed that the pistol was real and that "[I]f he had not had the gun, he would have had a fight on his hands. I figure myself to be a pretty good scrapper, but not when something like that is looking at you."

Dwayne Turley testified that at approximately 4:45 p.m. on April 1, 1994, Appellant came to Turley's residence in a white Ford Explorer. Turley subsequently got into the vehicle and he and Appellant eventually ended up on Interstate 24 in Kentucky. Turley also testified that he owned the gun that

Appellant had in his possession on April 1, 1994. Turley testified that the gun was a pellet pistol that he had thrown away when he and Appellant had been unable to fix it.

Sergeant Robert Ott of the Montgomery County Sheriff's Department testified that at approximately 4:30 p.m. on April 1, 1994, he received a dispatch to be on the lookout for a white 1993 Ford Explorer. At approximately 5:00 p.m., Ott saw Stuard's vehicle on Interstate 24 headed west towards St. Louis. Ott then asked for back-up, turned on his vehicle's emergency equipment, and began pursuit of Stuard's vehicle. During the subsequent chase, Appellant drove Stuard's vehicle at a high speed that reached one hundred and ten miles per hour at one point. Ott testified that traffic on the Interstate was fairly heavy and that Appellant passed between other vehicles several times. Appellant eventually ran into a guardrail and "flipped" Stuard's vehicle, damaging it beyond repair. When Appellant was taken into custody, he told Ott that he had been kidnapped by Turley.

Teresa Worley testified that during her shift as a nurse at Clarksville Memorial Hospital on April 1, 1994, she assisted Doctor Stephen Kent in performing a "rape kit" on Stuard. Doctor Kent testified that during the pelvic examination that he performed on Stuard, he found "a cloudy discharge in the vaginal vault that was consistent with semen." Doctor Kent also went to the Montgomery County jail and performed a "rape suspect examination" on Appellant.

Joe Minor of the Tennessee Bureau of Investigation testified that he conducted DNA tests on the rape kit taken from Stuard and the rape suspect kit taken from Appellant. Minor stated that the DNA profile obtained from the sperm found in Stuard's vaginal vault matched the DNA profile from Appellant's blood sample. Minor also testified that the possibility of selecting an unrelated person at random with a DNA profile that matched Appellant's would be one in 4,400,000 in the Caucasian population and one in 16,800,000 in the African-American population.

Appellant testified that on April 1, 1994, his sixteenth birthday, he met Stuard in the parking lot and she invited him into her vehicle. Appellant testified that Stuard voluntarily accompanied him to their "little secret place in the country" and had consensual sex with him. Appellant also testified that he and Stuard had seen each other approximately ten times before this occasion.

Appellant testified that he stole Stuard's vehicle "in revenge" because she had slapped him, but he denied taking her money. Appellant admitted that he recklessly endangered the general public during the high speed chase on Interstate 24.

## II. NOTICE OF THE TRANSFER HEARING

Appellant contends that the trial court should have either dismissed this case or remanded it to the juvenile court because he was not given timely written notice of his transfer hearing pursuant to Tennessee Code Annotated section 37-1-134, which states, in relevant part

> After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction. The disposition of the child shall be as if the child were an adult if:
>
> . . . .
>
>> Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and the child's parents, guardian or other custodian at least three (3) days prior to the hearing . . . .

Tenn. Code Ann. § 37-1-134(a)(3) (1994).

The record indicates that on April 5, 1994, the trial court informed Appellant's counsel in open court that there were two available dates for the transfer hearing, one on April 8, 1994, and one on April 11, 1994. Appellant's counsel then spoke to Appellant and Appellant's mother, who agreed that April 8 would be the best date to have the transfer hearing. Written notice was given on April 6, 1994, and the transfer hearing was held on April 8, 1994.

It is evident that any error in failing to provide written notice three days before the transfer hearing was caused by Appellant himself when he and his counsel chose to have the hearing on April 8 rather than on April 11. Thus, Appellant has clearly waived this issue. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to

prevent or nullify the harmful effect of an error.").[1]  Thus, this issue is without merit.

## III. DETERMINATION OF VENUE

Appellant contends that his convictions should be reversed because the State failed to establish venue at the acceptance hearing.  Appellant concedes that there is no Tennessee authority that expressly requires venue to be proven at an acceptance hearing.  Appellant suggests, however, that this requirement can be inferred from reading Tennessee Code Annotated sections 37-1-134(a) and 37-1-159(d)(2) together.  We disagree.  At the time of Appellant's transfer and acceptance hearings, section 37-1-134(a) provided that a juvenile court could transfer a juvenile to a criminal court of "competent jurisdiction" if it determined that the requirements of subsections (a)(1)–(4) and (b)(1)–(5) had been satisfied.  Tenn. Code Ann. § 37-1-134 (1994).  In addition, section 37-1-159 provided that, as part of the acceptance hearing, the criminal court must consider "[t]hose issues considered by the juvenile court pursuant to [subsections] 37-1-134(a) and (b)."  Tenn. Code Ann. § 37-1-159(d)(2) (1994).[2] We agree that section 37-1-134 requires the juvenile court to determine whether venue would be proper in the criminal court, i.e., whether the criminal court is a court of "competent jurisdiction."  However, we do not agree that subsection 37-1-

---

[1]Appellant concedes that he is either responsible for this error or that he failed to take whatever action was necessary to prevent or nullify the harmful effect of the error.  However, Appellant suggests that he is entitled to relief if subsection 37-1-134(a)(3) is mandatory or jurisdictional in nature.  Appellant cites no authority for his proposition, and we are unaware of any.  Further, the fact that the Tennessee Supreme Court has held that the entire transfer hearing is waivable, State v. Hale, 833 S.W.2d 65, 67 (Tenn. 1992), indicates that there is no reason why the written notice of the hearing cannot also be waived.

[2]We note that these requirements are substantially the same as those contained in the current versions of these statutes.  See Tenn. Code Ann. §§ 37-1-134, -159 (Supp. 1998).

159(d)(2) requires the State to re-establish venue during the acceptance hearing. That subsection merely requires the criminal court to consider the specific requirements of subsections 37-1-134(a)(1)–(4) and (b)(1)–(5), which do not include the question of venue. The record indicates that the trial court made the required determinations.

Even if the State had been required to establish venue at the acceptance hearing, any failure to do so was harmless error because the Montgomery County Circuit Court was clearly the proper venue for Appellant's trial. The Tennessee Constitution provides that a defendant has the right to be tried by an impartial jury of the county in which the crime was committed. Tenn. Const. art I, § 9. See also Tenn. R. Crim. P. 18. This Court has construed this constitutional guarantee as precluding a court from indicting or prosecuting a defendant for crimes committed outside of the county where the court is located. See State v. Hill, 847 S.W.2d 544, 545 (Tenn. Crim. App. 1992). Although venue is not an element of the crime, the State must prove by a preponderance of the evidence that the offense was committed in the county alleged in the indictment. Harvey v. State, 213 Tenn. 608, 612, 376 S.W.2d 497, 498 (1964); State v. Baker, 639 S.W.2d 670, 672 (Tenn. Crim. App. 1982). In this case, the State clearly established that each of the offenses with which Appellant was charged were committed in Montgomery County. First, Stuard testified at the transfer hearing that all of the events in question occurred in Montgomery County. Second, and more importantly, Stuard also testified at trial that all of these events occurred in

Montgomery County.[3]  Indeed, Appellant does not contend that venue was improper.  This issue is without merit.

## IV.  SUFFICIENCY OF THE INDICTMENT

Appellant contends that his conviction for attempted aggravated robbery should be reversed because the indictment was insufficient to charge him with that offense.  Under Tennessee law, aggravated robbery is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon."  Tenn. Code Ann. § 39-13-402(a)(1) (1997).  Count two of the indictment in this case alleged that Appellant had "act[ed] with intent to complete a course of action to cause the Aggravated Robbery of Stephanie Stuard . . . by use of a weapon fashioned to lead the said Stephanie Stuard to believe it to be a deadly weapon . . . ."  Appellant essentially claims that because the indictment did not include the word "reasonably," it only alleged that he had committed attempted robbery and thus, his conviction for attempted aggravated robbery should be reversed.[4]  We disagree.

The Tennessee Supreme Court has stated that "an indictment is valid if it provides sufficient information (1) to enable the accused to know the accusation

_____

[3]It could be argued that Stuard also testified during the acceptance hearing that all of the events in question occurred in Montgomery County.  The record reveals that when the prosecutor asked Stuard whether the events occurred in Montgomery County, Stuard replied "Uh-huh."  Admittedly, however, this response is somewhat ambiguous when viewed in the context of prior and subsequent questions and answers.

[4]The State contends that Appellant waived this issue pursuant to Rule 12(b)(2) of the Tennessee Rules of Criminal Procedure by failing to raise it either before trial or in his motion for a new trial.  Rule 12(b)(2), however, provides that either jurisdictional defects or the failure to properly charge an offense "shall be noticed by the court at any time during the pendency of the proceedings."  Tenn. R. Crim. P. 12(b)(2).  Thus, the waiver rule does not apply when the indictment fails to assert an essential element of the offense.  State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992).

to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997) (citations omitted). Further, "an indictment need not conform to traditionally strict pleading requirements." Id. "Thus, we now approach 'attacks upon indictments, especially of this kind, from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" Id. (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir.1978)). A "common sense" reading of count two of the indictment clearly indicates that it was sufficient to comply with the constitutional notice requirements recited in Hill. Count two clearly informed Appellant that he was being charged with the offense of attempted aggravated robbery and it substantially set forth each of the elements of that offense. To hold that count two of the indictment in the case is invalid merely because it omits the word "reasonably" would require us to engage in the "petty preciosity, pettifogging, technicality or hair splitting fault finding" that the supreme court jettisoned in Hill. Thus, this issue has no merit.

## V. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his convictions for especially aggravated kidnapping and aggravated robbery. Under Tennessee law, both of these offenses require use of a deadly weapon or "display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." See Tenn. Code Ann. §§ 39-13-305(a)(1), -402(a)(1) (1997). Appellant claims that the evidence was insufficient to convict him of

-11-

these offenses because no reasonable jury could have found that Appellant's display of an inoperable pellet gun would lead Stuard to "reasonably believe" that the gun was a deadly weapon. We disagree.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. Finally, Rule

13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt." See also Matthews, 805 S.W.2d at 780.

Appellant contends that because the gun has no trigger and no mechanism by which the pressure to propel a BB or pellet is generated, no rational jury could have concluded that Stuard reasonably believed that it was a real gun. That may have been true if Appellant had handed the gun to Stuard and given her a few minutes to examine it before he committed these offenses, but that was not the case. Stuard testified that when Appellant approached her in the parking lot, "he looked down at his gun and looked back up at me and he said get in your car. So I got in my car. I am not bullet proof." When they got in Stuard's vehicle, Appellant sat behind her. While Stuard was driving her vehicle, Appellant told her that he was going to shoot her in the leg. Stuard testified that Appellant held the gun in his right hand throughout the entire episode, even when he was raping her. A rational jury could infer from this evidence that Stuard never had enough of a chance to observe the gun to determine that it was inoperable because it was missing some parts. Further, a rational jury could have inferred that Stuard would have had to look inside the gun to see that the mechanism that propels the pellets was missing and that it was likely that Appellant had his finger positioned where the trigger would have been, thus preventing Stuard from seeing whether or not there was a trigger. It is clear that a rational jury could conclude that Stuard reasonably believed that the gun was real.[5] This issue has no merit.

_____

[5]Appellant suggests that this court should hold, under the "physical facts rule," that Stuard's belief that the gun was real could not possibly have been reasonable. Under this rule, courts can declare testimony incredible as a matter of law and decline to consider it where the testimony of a witness "cannot

-13-

## VI. DENIAL OF EXPERT ASSISTANCE

Appellant contends that the trial court erred when it denied his pre-trial motion for state funds "to obtain a DNA expert to cross-examine or assist in cross-examination of the State's DNA expert."

At the time of Appellant's motion in November 1994, Tennessee law did not provide for such expert assistance in non-capital cases, and the trial court properly denied the motion. See Tenn. Code Ann. § 40-14-207(b) (1997) (allowing for authorization of funds for expert services only in capital cases); see also State v. Williams, 657 S.W.2d 405, 411 (Tenn. 1983); State v. Harris, 866 S.W.2d 583, 585 (Tenn. Crim. App. 1992). On appeal, however, Appellant relies upon State v. Barnett, 909 S.W.2d 423 (Tenn. 1995), a Tennessee Supreme Court case which post-dates the trial court's ruling. In Barnett, the supreme court held that, where an indigent defendant's need for a state-paid psychiatric expert touches upon a due process concern, a trial court may order such services even in non-capital cases, provided the defendant can demonstrate a "particularized need." Id. at 431. While Barnett dealt with a psychiatric expert, this Court has previously extended the reasoning of Barnett to other forms of expert assistance. See State v. James W. Jacobs, No. 01C01-9601-CC-00048, 1997 WL 576493, at *2 (Tenn. Crim. App., Nashville, Sept 18, 1997) (citations omitted). Because Barnett constitutes a new constitutional rule, it must be applied retroactively to

---

possibly be true, is inherently unbelievable, or is opposed to natural laws." State v. Hornsby, 858 S.W.2d 892, 894 (Tenn. 1993) (citations omitted). "Courts have made it clear that in order for testimony to be considered incredible as a matter of law, it must be unbelievable on its face, i.e., testimony as to facts or events that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. (citations omitted). This rule has absolutely no application to this case. Stuard's belief is obviously not a physical fact. Further, as previously explained, Stuard's belief that the gun was real was not impossible, inherently unreliable, or contrary to natural laws.

Appellant's case which was in the appellate pipeline at the time of the Barnett decision.  See Id.

In this case, the trial court's denial of Appellant's motion for expert assistance was proper because Appellant failed to demonstrate a "particularized need" for such services.  Under Barnett,

> To establish particularized need, the defendant must show that a[n] . . . expert is necessary to protect his right to a fair trial.  Unsupported assertions that a[n] . . . expert is necessary to counter the State's proof are not sufficient.  The defendant must demonstrate by reference to the facts and circumstances of his particular case that appointment of a[n] . . . expert is necessary to insure a fair trial.

909 S.W.2d at 431.  Appellant's motion for expert services and his memorandum in support thereof consist almost entirely of legal arguments as to why a court is authorized to provide a defendant with expert services.  Indeed, Appellant's motion and memorandum do not explain why "the facts and circumstances of his particular case" demonstrate that appointment of an expert is necessary to insure a fair trial.  In fact, the only reference Appellant made to the specific facts and circumstances of his case is contained in the following statement:

> As part of its proof in this case the State will offer the testimony of one Joe Minor of the TBI Crime Lab who performed the analysis of the vaginal swabs taken from the victim.  It is believed that Mr. Minor will testify that those swabs were found to contain sperm cells and that the DNA removed from those sperm cells matched with DNA from the Defendant.
> This testimony will be so damning that unless the Defendant has an expert who can either cross-examine the State's expert or who can assist in cross-examination of the expert, the Defendant will not be able to present a "meaningful defense" and as such will be denied effective assistance of counsel.

We do not believe that this statement adequately demonstrates particularized need as required by Barnett.  As the supreme court stated in Barnett, when a motion for expert assistance is "accompanied by little more than undeveloped assertions that the services were needed to attempt to counter the State's proof,"

the trial court is within its discretion in denying the request. 909 S.W.2d at 430 (quoting State v. Cazes, 875 S.W.2d 253, 261 (Tenn. 1994)). Thus, the trial court did not abuse its discretion when it denied the motion for expert services.[6] This issue has no merit.

## VII. QUASHING OF DEFENSE SUBPOENA

Appellant contends that the trial court erred when it quashed his subpoena duces tecum for materials in the possession of the State's DNA expert. Specifically, Appellant claims that he was entitled to materials relating to the factual basis upon which the expert based his conclusions. We disagree.

On November 7, 1994, Appellant filed a motion for further discovery pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure, asking the trial court to require the State to provide him with information related to the DNA testing by the State's expert. On November 16, 1994, Appellant filed a motion to compel pursuant to Rule 16, asking the trial court to require the State to provide him with the materials used by the State's DNA expert in reaching his conclusions. After a hearing on the discovery motions, the trial court denied the motions. The trial court ruled that the materials requested by Appellant were not discoverable under Rule 16 because the materials used by the expert in arriving

---

[6]Even if the trial court had erred, any such error would have been harmless in light of the fact that Appellant admitted having sexual intercourse with Stuard. Appellant's claim that this sex act was consensual could not have been aided by a DNA expert in any conceivable way. See Tenn. R. App. P. 36(b).

-16-

at his conclusion were "work product."Appellant does not challenge the trial court's ruling that these materials were not discoverable under Rule 16.[7]

On November 21, 1994, Appellant filed a subpoena duces tecum, directing the State's DNA expert to appear on November 30, 1994, with the materials Appellant had sought to obtain through discovery. On November 22, 1994, the State filed a motion to quash the subpoena. The trial court granted the motion to quash the subpoena on November 30, 1994. The trial court found that in issuing the subpoena pursuant to Rule 17(c) of the Tennessee Rules of Criminal Procedure,[8] Appellant was simply attempting to obtain the same documents and other work product that were protected from discovery by Rule 16(a)(2). The trial court stated that although Rule 16 and Rule 17 are separate rules, they must be read together in context. In short, the trial court found that Appellant could not circumvent the discovery protections of Rule 16 simply by issuing a subpoena for the same materials under Rule 17.

We agree with the trial court that Rule 17(c)cannot be used to obtain materials which are not discoverable under Rule 16(a)(2). Certainly, the limits of Rule 16(a)(2) would be meaningless if a defendant could simply subpoena the protected materials under Rule 17(c). Indeed, under the Federal Rules of Criminal Procedure, "[a] defendant may not obtain through Rule 17(c) documents

---

[7]We note that, subject to exceptions not applicable here, Rule 16 "does not authorize the discovery or inspection of reports, memoranda, or other internal State documents made by the district attorney general or other State agents or law enforcement officers in connection with the investigation or prosecution of the case." Tenn. R. Crim. P. 16(a)(2).

[8] Rule 17(c) states that "[a] subpoena may also command a person to whom it is directed to produce the books, papers, documents, or tangible things designated therein. The court, upon motion made promptly and in any event by the time specified in the subpoena for compliance therewith, may quash or modify the subpoena if compliance would be unreasonable or oppressive." Tenn. R. Crim. P. 17(c).

which are protected from disclosure pursuant to Rule 16(a)(2)." United States v. Orena, 883 F. Supp. 849, 867 (E.D.N.Y. 1995). Our Rules 16(a)(2) and 17(c) are substantially identical to their federal counterparts. Thus, we see no reason why the result under our state rules should be any different. The trial court did not abuse its discretion when it granted the motion to quash the subpoena.[9] This issue is without merit.

## VIII. ADMISSION OF DNA EVIDENCE

Appellant contends that the trial court committed reversible error when it allowed the State to introduce evidence of the DNA test results. Specifically, Appellant claims that this evidence was inadmissible under Rule 403 of the Tennessee Rules of Evidence because its probative value was substantially outweighed by the danger of unfair prejudice.[10]

A trial court's decision to admit evidence is largely discretionary and that decision will not be reversed on appeal unless there has been an abuse of that discretion. State v. Gray, 960 S.W.2d 598, 606 (Tenn. Crim. App. 1997). In this case, we see no reason to disturb the trial court's ruling. The DNA evidence in this case was clearly probative. Indeed, it is hard to imagine anything with more probative value in a rape case than evidence that the accused had sexual

---

[9]Even if the trial court had erred in granting the motion to quash, any such error would have been harmless in light of the fact that Appellant admitted having sexual intercourse with Stuard. Discrediting the State's DNA expert would not have strengthened Appellant's claim that the sex was consensual. See Tenn. R. App. P. 36(b).

[10]Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403.

intercourse with the victim. At the time Stuard identified Appellant as her assailant, Appellant had not yet admitted to having had sex with her. Thus, the DNA evidence was clearly probative of whether Stuard was telling the truth. This probative value was not substantially outweighed by any of the considerations of Rule 403. The trial court did not abuse its discretion when it admitted this evidence. This issue is without merit.

## IX. LENGTH OF SENTENCES

Appellant contends that his sentences for especially aggravated kidnapping, aggravated rape, and reckless endangerment are excessive. Specifically, Appellant claims that the trial court misapplied various mitigating and enhancement factors in determining the lengths of these three sentences.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the appellant's statements, the nature and character of the offense, and the appellant's potential

for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1998); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id. Because the record in this case indicates that the trial court failed to properly consider the sentencing principles and all relevant facts and circumstances, our review is de novo without a presumption of correctness.

## A. Sentence for Especially Aggravated Kidnapping

In sentencing Appellant to twenty years for the especially aggravated kidnapping conviction, the trial court found that no mitigating factors were applicable. The trial court also found that Appellant's sentence should be enhanced because he had treated the victim with exceptional cruelty and because the injuries that he inflicted were particularly great. See Tenn. Code Ann. § 40-35-114(5), (6) (1991997).

We agree that none of the enumerated mitigating factors of Tennessee Code Annotated section 40-35-113 were applicable. However, the trial court should have considered the mitigating factor contained in Tennessee Code Annotated section 39-13-305, which states that in determining the sentence for especially aggravated kidnapping, "[i]f the offender voluntarily releases the victim alive . . . such action[] shall be considered by the court as a mitigating factor at the time of sentencing." Tenn. Code Ann. § 39-13-305(b)(2) (1997). Although we hold that this factor should have been considered, we believe that this factor is entitled to little weight, especially in light of the fact that Appellant did not in fact

possess a deadly weapon with which he could have killed Stuard without a difficult struggle.

We conclude that the trial court improperly applied enhancement factor (5), that the victim was treated with exceptional cruelty. The trial court apparently based its decision to apply this factor on the fact that Appellant told Stuard that he was going to shoot her in the leg. While this action was undoubtably cruel, it does not rise to the level of being "exceptionally cruel", as that term has been interpreted by our State Supreme Court. That Court has stated that before this factor may be applied, the facts in the case must "support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to'" the crime. State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997) (citation omitted). See also State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995) (holding that application of enhancement factor (5) "requires a finding of cruelty over and above that inherently attendant to the crime"). In this case, Appellant's threat to shoot Stuard in the leg came immediately after he told her that he was not going to kill her. A threat of the victim being shot is inherent in the offense of an especially aggravated kidnapping that is committed by the use of a firearm. Thus, application of enhancement factor (5) was not appropriate.

We also conclude that the trial court improperly applied enhancement factor (6), that the injuries inflicted upon the victim were particularly great. In applying this factor, the trial court relied on a finding that Stuard had suffered "personal injuries by way of emotional distress [and] the now inclusion in her life of fear." There is no question that emotional and psychological injuries can be

-21-

the basis for applying this enhancement factor. See State v. Smith, 891 S.W.2d 922, 930 (Tenn. Crim. App. 1994). "However, before this factor may be applied, the State has the burden of establishing that the emotional injuries and psychological scarring are 'particularly great.'" State v. Hoyt, 928 S.W.2d 935, 948 (Tenn. Crim. App. 1995) (citation omitted). "In order to prove that the injuries are particularly great and/or will endure 'for the rest of [the victim's] life,' the State must offer expert testimony to that effect." Id. (citation omitted). We do not doubt that Ms. Stuard was traumatized by the especially aggravated kidnapping. However, because the State failed to introduce any expert testimony that her emotional injuries were particularly great compared to those suffered by every victim of an especially aggravated kidnapping, application of enhancement factor (6) was not appropriate.

In our de novo review, we conclude that the trial court erroneously failed to apply enhancement factor (1), that Appellant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. See Tenn. Code Ann. § 40-35-114(1) (1997). The record indicates that Appellant had juvenile adjudications for theft of property ($1,000 to $10,000), burglary of an automobile, and sexual battery. Juvenile convictions may be used to enhance the sentence of an adult offender. State v. Adams, 864 S.W.2d 31, 34 (Tenn. 1993). Thus, enhancement factor (1) is clearly applicable. Further, given the serious nature of these prior offenses, we believe that this factor is entitled to significant weight.

Even though we hold that the trial court erred in applying some enhancement factors, a finding that enhancement factors were erroneously

applied does not equate to a reduction in the sentence. <u>State v. Keel</u>, 882 S.W.2d 410, 423 (Tenn. Crim. App. 1994). We hold that enhancement factor (1) clearly applies to this sentence and that this factor is entitled to significant weight. We further hold that the mitigating factor applicable to this sentence is entitled to only minimal weight. Thus, we hold that a sentence of twenty years for especially aggravated kidnapping is appropriate in this case.

## B. Sentence for Aggravated Rape

In sentencing Appellant to twenty-five years for aggravated rape, the trial court found that no mitigating factors were applicable. The trial court also found that Appellant's sentence should be enhanced because the injuries that he inflicted on the victim were particularly great. <u>See</u> Tenn. Code Ann. § 40-35-114(6) (1991997). We agree that none of the enumerated mitigating factors of Tennessee Code Annotated section 40-35-113 are applicable to the sentence for this offense. However, we hold that the trial court improperly applied one enhancement factor and should have applied two other enhancement factors to the sentence for this offense.

We conclude that the trial court improperly applied enhancement factor (6), that the injuries inflicted upon the victim were particularly great, for the same reason that we conclude that this factor should not have been applied to the sentence for especially aggravated kidnapping. The trial court based its decision to apply this factor on the fact that Stuard's normal life activities had been disrupted by the fear that resulted from her being raped. However, the record does not indicate that any expert evidence was introduced on the extent of

Stuard's psychological injuries. While we do not mean to minimize the trauma and fear that Stuard undoubtedly experienced as a result of this reprehensible act, the State has simply failed to meet its burden, under the law, of showing that this factor was applicable. See Hoyt, 928 S.W.2d at 948.

In our de novo review, we conclude that the trial court erroneously failed to apply enhancement factor (1) to the sentence for this offense for the same reason that it should have applied this factor to the sentence for especially aggravated kidnapping. This factor is entitled to especially great weight for this sentence in light of the fact that one of Appellant's prior adjudications was for sexual battery.

In our de novo review, we also conclude that the trial court improperly failed to apply enhancement factor (7), that this offense involved a victim and was committed to gratify Appellant's desire for pleasure or excitement. See Tenn. Code Ann. § 40-35-114(7) (1997). The Tennessee Supreme Court has noted that because pleasure or excitement is not an essential element of the offense of rape, it may be considered as an appropriate enhancement. Adams, 864 S.W.2d at 35 (citation omitted). The record indicates that Appellant raped Stuard for pleasure. Appellant testified that he ejaculated during sex with Stuard, that he felt "pure[] lust" for her, and that he "got that good feeling" when he had sex with her. Thus, the trial court should have applied factor (7) to enhance this sentence.

Because two enhancement factors and no mitigating factors apply to the sentence for aggravated rape, we hold that a sentence of twenty-five years for this offense is appropriate in this case.

## C. Sentence for Reckless Endangerment

In sentencing Appellant to two years for reckless endangerment, the trial court found that no mitigating factors were applicable. The trial court also found that this sentence should be enhanced because the offense involved more than one victim and because Appellant had no hesitation in committing an offense when the risk to human life was great. See Tenn. Code Ann. § 40-35-114(3), (10) (1997). We agree that none of the enumerated mitigating factors of Tennessee Code Annotated section 40-35-113 are applicable to the sentence for this offense. However, we hold that the trial court improperly applied one enhancement factor and should have applied one other enhancement factor to the sentence for this offense.

The trial court correctly applied enhancement factor (3) to the sentence for reckless endangerment because Appellant's conduct placed more than one person in danger of death or serious bodily injury. See Tenn. Code Ann. § 40-35-114(3) (1997). Appellant argues that the application of this factor to this sentence was improper because the existence of multiple victims was pleaded in the indictment and therefore, was an element of the offense. However, the indictment in this case alleged that Appellant "did recklessly engage in conduct with a deadly weapon . . . [which] placed another person or persons in imminent danger of death or serious bodily injury." Under the express terms of the

-25-

indictment, the State only had to prove that one person was endangered. Thus, endangering multiple persons was not an element of the offense as charged in the indictment. Appellant's conduct in driving a vehicle at one hundred and ten miles per hour in heavy traffic on Interstate 24 clearly endangered his passenger, other motorists, and the pursuing police officers. Thus, application of this factor was appropriate.

The trial court clearly erred by applying enhancement factor (10) to the reckless endangerment sentence because a high risk to human life is inherent in the offense. State v. Robert Chapman, No. 02C01-9510-CR-00304, 1997 WL 11280, at *3 (Tenn. Crim. App., Jackson, Jan. 15, 1997). However, for the same reason that enhancement factor (1) applied to the other sentences, factor (1) should have been applied to this sentence as well. We hold that because two enhancement and no mitigating factors apply to the sentence for reckless endangerment, a sentence of two years is entirely appropriate.

## X. IMPOSITION OF CONSECUTIVE SENTENCES

Appellant contends that the trial court erred when it ordered the sentences for especially aggravated kidnapping, aggravated rape, aggravated robbery, and reckless endangerment to run consecutively. Consecutive sentencing is governed by Tennessee Code Annotated section 40-35-115. The trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Further, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses

committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

In imposing consecutive sentences, the trial court found that Appellant was a dangerous offender whose behavior indicates little or no regard for human life and who has no hesitation in committing a crime in which the risk to human life is high. See Tenn. Code Ann. § 40-35-115(4) (1997). We agree. Indeed, Appellant attempted to escape in Stuard's stolen vehicle by driving at speeds up to one hundred and ten miles per hour and by driving in between moving vehicles. Appellant's conduct demonstrated indifference to a high probability of calamitous consequences to himself and motorists whom he was certain to encounter. See Wilkerson, 905 S.W.2d at 937–38. The trial court properly determined that Appellant is a dangerous offender.[11]

Because the trial court sentenced Appellant before Wilkerson was decided, the court made no express finding that the Wilkerson test was satisfied. However, we conclude that it is. First, consecutive sentences are clearly related to the severity of Appellant's offenses. Indeed, Appellant was convicted of five serious felony offenses and he put numerous lives at risk during this criminal episode. If anything, Appellant is fortunate that he received consecutive sentences for only four of the five convictions. Second, consecutive sentences are required in this case in order to protect the public from further criminal

---

[11]However, we do not agree with the trial court that the possible transmission of the HIV virus during the rape established that Appellant was a dangerous offender whose behavior indicates little or no regard for human life and who has no hesitation in committing a crime in which the risk to human life is high. While this may have been true if Appellant actually had the HIV virus and knew that he had the virus, there is no evidence in the record that Appellant had any sexually transmitted disease.

conduct by Appellant. The record indicates that Appellant's criminal conduct has become more and more violent with each new offense. Appellant apparently began with theft, moved on to vehicle burglary, then to sexual battery, and finally to the violent offenses at issue here. Further, the trial court found that Appellant had shown no remorse for his actions and had denied all responsibility for the aggravated rape of Stuard. The public certainly needs protection from Appellant's increasingly violent behavior. Finally, consecutive sentencing in this case is congruent with general principles of sentencing. This issue has no merit.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE

_____
DAVID G. HAYES, JUDGE