IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 29, 2020 Session

## STATE OF TENNESSEE v. TONY LYNN NIX

**Appeal from the Criminal Court for Knox County**
**No. 108293   G. Scott Green, Judge**

_____

### No. E2019-00415-CCA-R3-CD
_____

A Knox County jury convicted the defendant, Tony Lynn Nix, of aggravated robbery, and the trial court imposed a sentence of nine years in confinement.  On appeal, the defendant challenges the sufficiency of the evidence to support his conviction and requests plain error review of improper statements by the prosecutor.  After reviewing the record and considering the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, J., joined.  NORMA MCGEE OGLE, J., concurs in results only.

Mark E. Stephens, District Public Defender; John Halstead, Assistant Public Defender, for the appellant, Tony Lynn Nix.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

On March 19, 2016, Charles Hobbs was working at the All Star Market on Maynardville Highway.  The defendant, who frequented the market with his wife, came in and asked Mr. Hobbs if he could borrow some money.  Mr. Hobbs refused, and the defendant left the market.

However, the defendant returned later that afternoon, smelling of alcohol. The defendant walked to the back of the market where the cash register was located and placed a gun against Mr. Hobbs's back. Because Mr. Hobbs was familiar with guns, he believed the defendant's gun, which felt heavy and metallic, was a .38 caliber revolver. The defendant then demanded Mr. Hobbs give him the money in the cash register. When Mr. Hobbs reasoned with the defendant that he didn't really want to do this, the defendant told Mr. Hobbs that he was not leaving without the money and that he would "cut [Mr. Hobbs] in two if [he didn't] open [the cash register]." Mr. Hobbs tried to turn around to face the defendant, but the defendant "put his hand around [Mr. Hobbs's] shoulders and pushed [him] back." Because Mr. Hobbs was afraid the defendant would shoot him, he gave the defendant the money from the cash register, approximately $300. Afterward, the defendant told Mr. Hobbs to get down on the floor and threatened to "get [him]" if he got up.

After the defendant left the store, Mr. Hobbs walked outside and saw the defendant's truck pulling out of the parking lot and onto the highway. The defendant's wife was driving, and the defendant was in the passenger seat. Scott and Amy Coffey, who had briefly walked into the store during the robbery, were also outside and assisted Mr. Hobbs in calling 911.

Officer Rachel Sandlin with the Knox County Sheriff's Office was the initial responding officer. Officer Sandlin and Officer Sandy Campbell processed the scene which included photographing the store, processing for fingerprints, and collecting evidence.

Detective Tim Sellers with the Knox County Sheriff's Office was also called to the scene. After arriving on the scene, Detective Sellers spoke with Mr. Hobbs and Mr. and Ms. Coffey. Because the witnesses knew the defendant, Detective Sellers was able to locate him within a few days of the robbery. Following the defendant's arrest, he gave a statement to police in which he admitted to robbing the market but denied using a real gun. Instead, the defendant claimed he used his nephew's cap gun. The defendant told the detective where he tossed the toy gun, and Detective Sellers searched three times in an attempt to locate it. During the third search, the defendant accompanied Detective Sellers. However, because the defendant merely wandered around the area and did not appear to know exactly where to look, the gun was never located.

At trial, the State called Charles Hobbs, Officer Rachel Sandlin, and Detective Tim Sellers as witnesses, and all rendered testimony consistent with the foregoing. In addition, the State submitted footage of the robbery taken from the surveillance cameras in the market. On cross-examination, Mr. Hobbs agreed the defendant did not attempt to disguise himself during the robbery. Regarding the possibility that the defendant's gun may have

been a cap gun, Mr. Hobbs testified the defendant's gun did not appear to have a "hole in it" and looked like a handgun.

The defendant declined to present evidence. Following deliberations, the jury found the defendant guilty of aggravated robbery, and the trial court subsequently sentenced the defendant to nine years in confinement. The defendant filed a motion for new trial which the trial court denied. This timely appeal followed.

## *Analysis*

On appeal, the defendant argues the evidence at trial was insufficient to support his conviction. The defendant also requests plain error review of several statements made by the prosecutor during closing and rebuttal argument. The State contends that the evidence is sufficient and that the prosecutor's closing and rebuttal arguments did not create any plain error. We agree with the State.

## I. Sufficiency

The defendant argues the evidence at trial is insufficient to support his aggravated robbery conviction. Specifically, the defendant contends the proof failed to show the robbery was accomplished with a deadly weapon, and Mr. Hobbs's testimony was not supported by the surveillance video. The State contends Mr. Hobbs's testimony established the defendant used a firearm to accomplish the robbery, and the surveillance video does not demonstrate that his testimony "cannot be true, is inherently unbelievable, or is opposed to natural laws."

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the following rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere, and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

As charged in this case, aggravated robbery is "[a]ccomplished with a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). "Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a).

Viewed in the light most favorable to the State, Mr. Hobbs testified the defendant approached him at the cash register and placed a gun against his back. Mr. Hobbs was familiar with guns and believed the defendant's gun felt and looked like a .38 caliber revolver. The defendant demanded the money in the cash register and threatened to "cut [Mr. Hobbs] in two" if he did not comply with the defendant's demands. Because Mr. Hobbs was afraid the defendant would shoot him, he gave the defendant the money from the cash register. The defendant then forced Mr. Hobbs onto the floor and threatened to "get [him]" if he got up. Based on this evidence, a rational jury could find aggravated robbery beyond a reasonable doubt.

The defendant, citing the "physical facts rule," argues that Mr. Hobbs's testimony regarding the gun used in the robbery was inconsistent with the surveillance videos and that, therefore, Mr. Hobbs's testimony should be disregarded. The physical facts rule is "'the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded.'" *State v. Allen*, 259 S.W.3d 671, 679 (Tenn. 2008) (quoting *State v. Hornsby*, 858 S.W.2d 892, 894 (Tenn. 1993)). If a witness's testimony "cannot possibly be true, is inherently unbelievable, or is opposed to natural laws, courts can declare the testimony incredible as a matter of law and decline to consider it." *Id.* (quotation omitted). The physical facts rule is a power "that should be used sparingly." *Hornsby*, 858 S.W.2d at 895. If the testimony

"is capable of different interpretations, the matter should be left for the jury to decide as the sole arbiter of credibility." *Id.* The determination of whether there are inconsistencies in testimony, the reconciliation of conflicts in testimony, and the determination of how this might affect a witness's credibility, are within the province of the jury. *Id.*

The defendant claims Mr. Hobbs's testimony regarding the defendant's gun was incredible; however, as previously noted, determining questions of the credibility of the witnesses and inconsistencies in testimony are within the province of the jury. Furthermore, we have reviewed both the surveillance video and the screenshots from the video and conclude they fully support Mr. Hobbs's testimony. Therefore, the physical facts rule is inapplicable, and the defendant is not entitled to relief on this issue.

### B.    Improper Closing

The defendant argues the prosecutor made several statements during closing and rebuttal argument which constituted misconduct, prejudicing the outcome of the trial. Specifically, because there is a "legitimate question . . . of whether an actual deadly weapon was used," the defendant contends the prosecutor erred in telling the jury that the defendant could be convicted even if a deadly weapon was not used during the robbery because the facts of the robbery were otherwise "aggravated." Although the defendant contemporaneously objected to the statements, he acknowledges he failed to request a mistrial or ask the trial court to take any curative measures and, therefore, requests review under the plain error doctrine. The State contends the defendant is not entitled to relief under the plain error doctrine.

Before an error may be recognized, it "must be 'plain' and it must affect a 'substantial right' of the accused." *State v. Adkisson*, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994). "An error would have to [be] especially egregious in nature, striking at the very heart of the fairness of the judicial proceeding, to rise to the level of plain error." *State v. Page*, 184 S.W.3d 223, 231 (Tenn. 2006). In *State v. Smith*, our Supreme Court adopted *Adkisson*'s five-factor test for determining whether an error should be recognized as plain:

(a) The record must clearly establish what occurred in the trial court;

(b) A clear and unequivocal rule of law must have been breached;

(c) A substantial right of the accused must have been adversely affected;

(d) The accused did not waive the issue for tactical reasons; and

(e) Consideration of the error is "necessary to do substantial justice."

24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting *Adkisson*, 899 S.W.2d at 641-42). "[A]ll five factors must be established by the record before this Court will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* at 283.

The established test for determining whether prosecutorial error based on improper comments amounts to reversible error is whether the conduct was so improper, or the argument so inflammatory, that it affected the verdict. *See State v. Reid*, 164 S.W.3d 286, 344 (Tenn. 2005); *State v. Goltz*, 111 S.W.3d 1, 5 (Tenn. Crim. App. 2003). In assessing whether comments made by the prosecution are so inflammatory or improper as to affect the verdict, the court must consider five factors:

> (1) The conduct complained of viewed in the context and the light of the facts and circumstances of the case;
>
> (2) The curative measures undertaken by the court and the prosecution;
>
> (3) The intent of the prosecutor in making the improper statements;
>
> (4) The cumulative effect of the improper alleged conduct and any other errors in the record; and
>
> (5) The relative strength or weakness of the case.

*Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); see also *Goltz*, 111 S.W.3d at 5-6.

During her closing argument, the prosecutor stated:

> The only thing he didn't admit was that he had a gun. And he told the police that he had what he referred to as a little cap pistol. But the State submits that that doesn't really matter. And when you hear the Court's instruction, and I'm going to go over this a little bit in the rebuttal argument, you will see that under the law it doesn't really matter.
>
> And we believe that the proof has shown you through Mr. Hobbs's testimony that this was, in fact, a gun. It was what Mr. Hobbs recognized to be either a .38 or a .32 revolver. He told you from the witness stand that he had some knowledge of guns. He knew what a gun was. He talked to you about the weight and how it felt in his back. He talked to you about what he

- 6 -

saw and what he felt. And he described to you his fear and, you know, his reasonable fear of harm. He thought he was going to die.

And I want you to remember what he said to you, the remarks that [the defendant] made to him as he accomplished this robbery, how he threatened him, threatened to shoot him, cut him in two.

. . .

And I believe when [trial counsel] made his opening statement, he told you that this was something less. He wanted you to consider something less. That this wasn't aggravated robbery, this was just a robbery. And I want you to think about what you heard from Mr. – from Charlie. It was aggravated to him. It scared him. It terrified him.

. . .

This was a gun. Charlie knew it. Charlie saw it. Charlie felt it. And we're asking you to convict [the defendant] of what he did. He committed an aggravated robbery. Not just a robbery, an aggravated robbery.

During rebuttal argument, the prosecutor then made the following statements:

You're going to hear the [c]ourt's instructions and this is what deadly weapon is. And it doesn't even have to be a firearm, okay. It doesn't have to be a real gun. It doesn't have to be an operable gun. It doesn't have to be a loaded gun. It doesn't have to be a gun. It is a firearm or anything manifestly designed, made, or adapted. Okay. Adapted for the purpose of inflicting death or serious bodily injury. Or anything that in a manner of its use or intended use is capable of causing death or serious bodily injury.

Okay. Well, you can hurt somebody with a hard metal object. You can beat someone to death.

Here, consideration of the prosecutor's statements is not necessary to do substantial justice in light of the overwhelming evidence submitted at trial. Mr. Hobbs testified he was standing at the cash register when the defendant placed a gun against his back and demanded money. The gun felt like a .38 caliber revolver, and the defendant threatened to shoot Mr. Hobbs if he did not comply with his demands. Fearing for his life, Mr. Hobbs gave the defendant the money from the cash register. Surveillance video of the robbery fully supports Mr. Hobbs's testimony. Moreover, the trial court properly instructed the

jury on the law concerning the charged offense -- the defendant accomplished the robbery with a deadly weapon. The trial court also correctly defined deadly weapon for the jury – "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury, or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Finally, the trial court instructed the jury to follow the law, not the opinions of the attorneys, and we presume the jury followed those instructions. *State v. Robinson*, 146 S.W.3d 469, 494 (Tenn. 2004). Accordingly, we conclude the defendant is not entitled to plain error review on this issue; therefore, the defendant is not entitled to relief on this issue.

### *Conclusion*

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
J. ROSS DYER, JUDGE