STATE of Tennessee, Plaintiff–
Appellant,

v.

Keith Ray HORNSBY, Defendant–
Appellee.

Supreme Court of Tennessee,
at Jackson.

July 6, 1993.

Charles W. Burson, Atty. Gen. & Reporter, Kimbra R. Spann, Asst. Atty. Gen., Nashville, for plaintiff-appellant.

Hal Gerber, Lewie R. Polk, III, Gerber Law Offices, Memphis, for defendant-appellee.

## OPINION

DROWOTA, Justice.

The State has appealed from a judgment of the Court of Criminal Appeals reversing and dismissing, on the basis of the "physical facts rule," the convictions of Keith Hornsby, Defendant–Appellee, for vehicular homicide and reckless driving. We granted the State's Rule 11 application to decide whether the "physical facts rule" is applicable to a criminal case and, if so, whether it should have been applied to the facts presented here. For the reasons set forth below, we hold that the physical facts rule is applicable to criminal cases but that the Court of Criminal Appeals erred in applying it to this case. Accordingly, the judgment of the intermediate court is reversed and the case is remanded to that court for consideration of pretermitted issues.

I.

At approximately 4 a.m. on July 2, 1989, a Nissan pick-up truck being driven by the Defendant and a Pontiac automobile being operated by Deborah Peak collided in the intersection of Airways Boulevard and Winchester Road in Memphis. At the time of the accident, it was dark and the road surface was wet from rain. As a result of the collision, 32–year–old Peak was killed, leaving behind two young children. The Defendant, age 27, was thrown through the passenger window of his truck. He then left the scene on foot and walked one mile to call a friend to pick him up. He was arrested approximately an hour and a half after the collision and failed two sets of field sobriety tests. The Defendant had spent the night frequenting bars and clubs. He had a blood alcohol content of .09 approximately two hours and nineteen minutes after the accident. Testimony revealed that his blood alcohol content would have been between .11 and .13 at the time of the crash.

The Defendant was charged with vehicular homicide, reckless driving, driving while under the influence of an intoxicant, and leaving the scene of an accident. He pled guilty to leaving the scene of an accident and received a sentence of six months confinement and a $600 fine. At trial, the jury found the Defendant guilty of reckless driving, vehicular homicide and driving while under the influence of an intoxicant.

He was sentenced to two years for the vehicular homicide conviction, 90 days (plus a $600 fine) for driving under the influence, and 30 days (plus a $350 fine) for the offense of reckless driving. Thus, because the sentences imposed were to run concurrently, the effective sentence was 2 years imprisonment and fines totaling $1,550.00. The trial court denied the Defendant's request for probation, noting that the Defendant's vehicle had been speeding and that he left the scene of the accident "on impulse" and had walked one mile, in the opposite direction of a service station near the collision site, to call for a friend to pick him up. Even after he was in the company of his friend, he did not notify police or otherwise inquire if anyone had been injured or killed in the violent crash. When asked why he never called police, he stated that he "just didn't think to."

The Court of Criminal Appeals reversed the convictions for vehicular homicide and reckless driving.[1] Invoking the "physical facts rule", the intermediate court concluded that the testimony of the only two eyewitnesses to the accident irreconcilably conflicted with the physical evidence in the case. Specifically, the court held, as more fully discussed below, that the damage to the vehicles was such that the collision could not have happened the way the two eyewitnesses said it did. Thus, the court disregarded the testimony of the two eyewitnesses and concluded that "no rational trier of fact should have concluded that the [Defendant] was guilty of vehicular homicide or reckless driving beyond a reasonable doubt."

## II.

■■■ The so-called "physical facts rule" is the accepted proposition that in cases where the testimony of a witness is entirely irreconcilable with the physical evidence, the testimony can be disregarded. *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38, 41–42 (Tenn.App.1975); *Gordon's Transports, Inc. v. Bailey*, 294 S.W.2d 313, 327 (Tenn.App.1956); *Camurati v. Sutton*,

48 Tenn.App. 54, 342 S.W.2d 732, 738 (1960); *Oliver v. Union Transfer Co.*, 17 Tenn.App. 694, 71 S.W.2d 478, 480 (1934). That is, where the testimony of a witness "cannot possibly be true, is inherently unbelievable, or is opposed to natural laws," courts can declare the testimony incredible as a matter of law and decline to consider it. *United States v. Narciso*, 446 F.Supp. 252, 282 (E.D.Mich.1977). As stated by the Court in *Wood v. United States*, 342 F.2d 708, 713 (8th Cir.1965), "where undisputed physical facts are entirely inconsistent with and opposed to testimony ... the physical facts must control. No jury can be allowed to return a verdict based upon oral testimony which is flatly opposed to physical facts, the existence of which is incontrovertibly established." *Id.* at 713–14. Courts have made it clear that in order for testimony to be considered incredible as a matter of law, it must be unbelievable on its face, i.e., testimony as to facts or events that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature. *See, e.g., United States v. Palacios*, 612 F.2d 972, 973 (5th Cir.1980). Thus, for example, if a witness was to testify that he saw the sun set in the east, the court would be free to declare such testimony incredible as a matter of law and disregard it.

■■■ The intermediate court in the case at bar accurately summarized the physical facts rule as follows:

When it is impossible to reconcile the physical evidence with the testimony given by the witnesses, an appellate court is not bound by the witnesses' testimony when determining the sufficiency of the evidence. *Lowe v. Preferred Truck Leasing, Inc.*, 528 S.W.2d 38, 41–42 (Tenn.App.1975); *Gordon's Transports, Inc. v. Bailey*, 41 Tenn.App. 365, 395, 294 S.W.2d 313, 327 (1956); *Oliver v. Union Transfer Co.*, 17 Tenn.App. 694, 698–699, 71 S.W.2d 478, 480 (1934). "Established physical facts are controlling over direct testimony when it is impossible to recon-

---

1. The Defendant does not contest the convictions for leaving the scene of the accident or

driving while under the influence of an intoxicant.

cile the physical facts with the direct testimony." *Gordon's Transports, Inc. v. Bailey,* 41 Tenn.App. at 395, 294 S.W.2d at 327. When the established physical evidence cannot be reconciled with the witnesses' testimony, an appellate court may disregard the testimony that is impossible or palpably improbable. As the court said in *Camurati v. Sutton,* 48 Tenn.App. 54, 68, 342 S.W.2d 732, 738 (1960): "Where the physical facts are such that belie the truth of oral testimony there can be no weight given to the oral testimony, for it becomes no evidence whatever."

Our courts have also correctly observed that to apply the physical facts rule, the facts used to negate testimony must be "well-established and universally recognized physical laws." *Nelms v. Tennessee Farmers Mut. Ins. Co.,* 613 S.W.2d 481, 483 (Tenn.App.1978).[2] In addition, the rule may not be invoked "where its application depends upon assumptions or calculations based upon estimates as to speed, distance, time, and other such uncertain matters in the movement of vehicles." *Waller v. Morgan,* 23 Tenn.App. 355, 133 S.W.2d 614, 616 (1939).

 The State in this case argues that the physical facts rule should not apply to criminal cases because the rule is somehow inconsistent with the notion that when reviewing evidentiary sufficiency in criminal cases appellate courts are to view the record in a light most favorable to the State and uphold the jury's verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). We disagree. While it is true that the physical facts rule has not been discussed in the context of a criminal case in this State, we see no reason why testimony that is entirely impossible to reconcile with the physical laws of nature ought not be disregarded in a criminal case, just as it would be in a civil case. Indeed, the physical facts rule has been the focus of much discussion in several criminal cases in other jurisdictions, both federal, *see United States v. Lerma,* 657 F.2d 786 (5th Cir. 1981); *United States v. De Los Santos,* 625 F.2d 62 (5th Cir.1980); *United States v. Palacios,* 612 F.2d 972 (5th Cir.1980); *Jackson v. United States,* 353 F.2d 862 (D.C.Cir.1965); *Wood v. United States,* 342 F.2d 708 (8th Cir.1965); *United States v. Narciso,* 446 F.Supp. 252 (E.D.Mich.1977), and state, *see People v. Brassfield,* 652 P.2d 588 (Colo.1982); *Haskins v. State,* 97 Wis.2d 408, 294 N.W.2d 25 (1980); *Barnes v. State,* 258 Ark. 565, 528 S.W.2d 370 (1975); *Parker v. State,* 280 Ala. 685, 198 So.2d 261 (1967).

We hold that the physical facts rule is applicable to both civil and criminal cases. We caution, however, that the power to disregard oral testimony because of its inherent lack of believability is one that should be used sparingly. Only when the testimony is inherently improbable and impossible of belief should courts intervene to declare it incredible as a matter of law. *Lerma,* 657 F.2d at 789. When the testimony is capable of different interpretations, the matter should be left for the jury to decide as the sole arbiter of credibility. *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374, 387 (1966); *Norton v. Gordon Foods, Inc.,* 458 F.2d 1071 (6th Cir.1972); *United States v. Narciso,* 446 F.Supp. 252, 283 (E.D.Mich. 1977). Deciding whether there are inconsistencies in testimony, reconciling conflicts in testimony, and how this might affect a witness's credibility, are all within the province of the jury. *See State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984);

---

**2.** The court in *Nelms* aptly noted: "In the review of a judgment based on a jury verdict [in a civil case], the appellate courts in this state do not weigh the evidence or decide where the preponderance lies but merely *determine whether* there is material evidence to support the verdict. (Citations omitted.). This does not mean that the appellate courts must accept as credible evidence the impossible. Our courts recognize and follow the physical evidence rule. Courts may disregard impossible or palpably improbable testimony and treat it as no evidence. Further, testimony of facts inherently impossible and absolutely at variance with well-established and universally recognized physical laws is not credible evidence." (Citations omitted.). *Nelms,* 613 S.W.2d at 483.

*Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim.App.1978); *See also De Los Santos*, 625 F.2d at 65. As the court observed in *Smith v. Steele*, 44 Tenn.App. 238, 313 S.W.2d 495 (1956), "[t]he improbability of the truth of the testimony, which justifies rejection under the physical facts rule, cannot rest upon any theory involving the consideration of the comparative credibility of the witnesses." *Smith* at 508.[3]

### III.

Returning to the case at bar, we note that there were two eyewitnesses to the accident which occurred in the intersection of Airways Boulevard, that runs north and south, and Winchester Road, which runs east and west. These two eyewitnesses were stopped, side-by-side, on Winchester facing west, waiting for the traffic signal to change. According to both witnesses, the Defendant was driving north on Airways in a pickup truck at a high rate of speed. Although the streets were wet from rain, the Defendant did not slow down as he approached the intersection. The victim was heading east on Winchester. Prior to the time the Defendant reached the intersection, the light turned red. Nevertheless, he did not slow down and proceeded into the intersection where his truck struck the car driven by the victim. After the collision, the Defendant's truck was hurled through the air, hitting the motionless vehicles being operated by the two witnesses who were facing the intersection. After checking on the condition of the victim, who was apparently dead, one of the witnesses ran to a nearby service station and called police. By this time, however, the Defendant had fled the scene.

Despite the testimony of both witnesses that the Defendant was going north on Airways and the victim east on Winchester prior to the collision, a police officer who responded to the accident, Officer Seay, testified that he believed the accident occurred in a different manner. Officer Seay was not present at the scene during the collision but, based upon a gouge mark in the pavement and the damage to the vehicles, he reached the conclusion that the Defendant, not the victim, was going east on Winchester, and that the victim, not the Defendant, approached the intersection on Airways while traveling north. The Defendant himself testified that as he was turning onto Winchester to head east (from Airways headed south), he was hit by the victim who was traveling north on Airways. The Defendant's truck sustained frontal damage, while the victim's car was hit on the driver's side. Curiously, the Defendant stated that he did not see the victim's car until it was one foot in front of him.

Based on the foregoing proof, the Court of Criminal Appeals concluded that the testimony of the two eyewitnesses to the accident irreconcilably conflicted with the physical evidence adduced by Officer Seay. The court explained:

> While the two eyewitnesses testified that the pickup truck was travelling northbound on Airways Boulevard and the Pontiac was travelling eastbound on Winchester, the physical facts do not support their testimony. The damage to the Pontiac was limited to the left or driver's side of the vehicle. The damage to the pickup was limited to the front of the vehicle. Had the two vehicles been travelling as indicated by the witnesses, the damage to the Pontiac would have been to the right or passenger's side of the vehicle—not the left or driver's side. The physical facts are consistent with the [Defendant's] testimony regarding the direction of the vehicles. Moreover, the investigating officer [Officer Seay] reached this conclusion based upon the statements of the witnesses at the scene, the location of the damage on the respective vehicles, the gouge mark found in the pavement, and other physical facts.

---

**3.** The court in *Smith* went on to say that "[n]either can the physical facts rule apply when it is necessary to *estimate distances or measurements*, or to start with the assumption of the existence of any fact, and certainly not when the testimony is consistent with the physical facts." *Smith*, 313 S.W.2d at 508 (Emphasis in original.).

Thus, the court held that the testimony of the two eyewitnesses could be disregarded and consequently "no rational trier of fact should have concluded that the [Defendant] was guilty of vehicular homicide or reckless driving beyond a reasonable doubt."

■ We are persuaded that the physical facts rule is not applicable to this case. Officer Seay himself admitted that the physical facts in the case could support a theory different from that espoused by him or by the Defendant. Specifically, Officer Seay testified that if the victim's vehicle had spun around prior to the accident, and if the Defendant's truck had been traveling north on Airways, the physical facts (gouge mark and damage to the vehicles) would be consistent with the State's theory based on the events as seen and described by the two eyewitnesses. Indeed, one of the witnesses testified that the vehicles had spun around prior to impact. This certainly is not implausible considering the fact that the pavement was wet and the victim may have attempted to avoid the collision by suddenly braking or sharply turning the steering wheel, or both.[4] Thus, the same physical facts would support a theory that the Defendant did indeed run the red light while traveling north on Airways and that the victim was traveling east on Winchester as described by the only two witnesses. Officer Seay indicated that the gouge mark in the pavement would have been present at the same point in the road regardless of the direction of the vehicles. Far from being irreconcilable with the eyewitness' account, the physical facts to which Officer Seay testified could actually support the scenario described by the two eyewitnesses.

The testimony of the eyewitnesses should not have been declared incredible as a matter of law and disregarded. Rather, in a situation such as this, the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses. In this case, the jury obviously determined that the two eyewitnesses to the accident were correct regarding the relative directions from which the two vehicles involved in this collision approached the intersection. The evidence in the record supports that conclusion and we find, therefore, that a rational trier of fact could have found the Defendant guilty of vehicular homicide and reckless driving beyond a reasonable doubt. It can hardly be said that the testimony of the two eyewitnesses is so improbable as to amount to facts or events that the witnesses physically could not have observed or events that could not have occurred under the laws of nature.

In view of the foregoing, the judgment of the Court of Criminal Appeals is reversed. The case is remanded to that court for consideration of pretermitted issues relative to sentencing. Costs are taxed to the Defendant.

REID, C.J., and O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.

---

**4.** No skid marks were left by either vehicle because the pavement was wet.