FILED

04/23/2024

Clerk of the
Appellate Courts

# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs at Knoxville January 24, 2024

## STATE OF TENNESSEE v. MARSHAWN BRAKEFIELD

**Appeal from the Criminal Court for Shelby County**
No. 21-00118     Jennifer Johnson Mitchell, Judge

_____

### No. W2023-00766-CCA-R3-CD
_____


A Shelby County jury convicted the Defendant, Marshawn Brakefield, of attempted first degree murder involving serious bodily injury and employing a firearm during the commission of a dangerous felony. The trial court sentenced the Defendant to serve an effective sentence of twenty-eight years. On appeal, the Defendant challenges the legal sufficiency of the evidence supporting his convictions, arguing that the only proof at trial was the testimony of a single witness who was not credible. Upon our review, we respectfully affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and KYLE A. HIXSON, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the appellant, Marshawn Brakefield.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano, Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Michael McCusker and Paul Lichlyter, Assistant District Attorneys General, for the appellee, State of Tennessee.


## OPINION


## FACTUAL BACKGROUND


On September 8, 2020, Jamal Griffin went to his barbershop for a haircut in Memphis, Tennessee. When he arrived, he saw his barber, the barber's cousin, and the Defendant, who was next in line to get his haircut. While waiting, Mr. Griffin noticed that

the Defendant was holding a "chopper pistol."[1]  When it was the Defendant's turn to get his haircut, he handed the weapon to the barber's cousin.

The barber shop offered a "VIP treatment" promotion, where a customer could pay extra to skip the line.  When the Defendant sat in the barber's chair, Mr. Griffin informed the barber that he wanted to skip the line by paying for the VIP treatment as he often did.  The Defendant then got up from the chair and went to join a group of people standing outside.

Mr. Griffin then sat down in the chair to get his haircut.  The barber's cousin then entered the barber shop and requested that the barber join him by the front door.  After a brief conversation with his cousin, the barber returned to cutting Mr. Griffin's hair.  A short time later, the barber's cousin, another individual, and the Defendant reappeared at the front door.  At this time, the Defendant was carrying his pistol in his pants.

The Defendant approached Mr. Griffin and aimed his firearm at him.  In an attempt to prevent the Defendant from shooting him, Mr. Griffin told the Defendant that he could have his backpack, which contained cash and other items.  The Defendant ignored the pleas, shot Mr. Griffin in the chest at close range, and left the shop.  Although the wound did not kill him, Mr. Griffin "played dead" on the barbershop floor as he heard the Defendant reenter the barbershop and demand the backpack.  As he was leaving for the second time, the Defendant told the barber, "I love you.  Don't snitch on me."

Officers arrived on the scene, rendered medical aid to Mr. Griffin, and had him transported to the hospital.  A few days after the shooting, Mr. Griffin gave a statement to officers and identified the Defendant from a six-person photographic lineup.  Mr. Griffin spent the next three months in the intensive care unit on a ventilator.  The gunshot also resulted in Mr. Griffin's developing a hernia that impaired his ability to work and lift heavy objects.

On March 25, 2021, a Shelby County grand jury charged the Defendant with attempted first degree murder involving serious bodily injury, employing a firearm during the commission of a dangerous felony, and especially aggravated robbery.  Following a trial, the jury found the Defendant guilty of the first two offenses but acquitted the Defendant of the especially aggravated robbery charge.  On May 11, 2023, the trial court sentenced the Defendant to serve twenty-two years for the attempted first degree murder

---

[1]     Later at trial, a firearms expert from the Tennessee Bureau of Investigation testified that the gun was "an AR-15 style weapon."  He clarified that the weapon was technically a pistol because the stock had been removed, but noted that the gun "still fires the same kind of caliber as a full-size AR-15."  In other words, "even though it's technically a pistol, [the weapon] is firing rifle rounds."

conviction and six years for the firearm conviction. The court aligned the sentences to be served consecutively for an effective sentence of twenty-eight years.

The Defendant filed a timely motion for a new trial, which the trial court heard and denied on the same day as the sentencing hearing. Thirteen days later, the Defendant filed a timely notice of appeal.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The sole issue in this case is whether the evidence is legally sufficient to support the Defendant's convictions for attempted first degree murder and employing a firearm during the commission of a dangerous felony.

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotation marks and citation omitted).

## ANALYSIS

### A. REVIEW OF WITNESS CREDIBILITY ON APPEAL

The Defendant's principal argument is that the evidence is insufficient to support his convictions because they are based on the testimony of a single witness who was not credible. He asserts that no rational trier of fact could have accredited Mr. Griffin's testimony given his prior felony drug convictions and his perceived dishonesty for being

3

at the barbershop. Because the Defendant relies heavily on this argument, we believe that a more detailed review of his position is appropriate.

The standard of appellate review is important to this case. When a defendant challenges the legal sufficiency of the convicting evidence, the standard of review "does not permit a court to make its own subjective determination of guilt or innocence[.]" *Jackson*, 443 U.S. at 319 n.13. Instead, the standard is intentionally deferential to the State's case because it seeks to preserve the jury's role in our system of separated powers and "impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* at 319. Properly conceived, the role of a reviewing court in assessing the legal sufficiency of the convicting evidence is not to "reevaluate the credibility of the witnesses or to revisit inconsistencies in the testimony[,]" should there be any. *State v. Murray*, No. M2021-00688-CCA-R3-CD, 2022 WL 17336522, at *5 (Tenn. Crim. App. Nov. 30, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023). As such, arguments that challenge "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts" will usually fall short. *Jackson*, 443 U.S. at 319.

To that end, the Defendant's arguments as to the credibility of Mr. Griffin have no merit in this Court. Although the Defendant argues that his convictions are largely based on Mr. Griffin's testimony, we have often recognized that "a defendant may be convicted upon the uncorroborated testimony of one witness." *State v. Wyrick*, 62 S.W.3d 751, 767 (Tenn. Crim. App. 2001); *see also State v. Collier*, 411 S.W.3d 886, 900 (Tenn. 2013). Although the Defendant asserts that Mr. Griffin's criminal record undermined his credibility at trial, we "do not engage in the assessment of witness credibility" on appeal. *State v. Lemacks*, 996 S.W.2d 166, 172 (Tenn. 1999). Although the Defendant contends that his acquittal on one charge shows that the jury did not fully credit Mr. Griffin, we do not "speculat[e] as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." *State v. Davis*, 466 S.W.3d 49, 76 (Tenn. 2015) (citation and internal quotation marks omitted). And although the Defendant argues that Mr. Griffin's testimony is inconsistent with other evidence, we must generally credit the testimony of the State's witnesses even if other evidence arguably conflicts with it. *See State v. Jenkins*, No. M2022-00693-CCA-R3-CD, 2023 WL 5813706, at *9 (Tenn. Crim. App. Sept. 8, 2023) (affirming a conviction for second degree murder based upon the testimony of a single witness even when others testified that the witness must have been mistaken), *no perm. app. filed*.[2]

---

[2] The Defendant does not argue that Mr. Griffin's testimony was not credible as a matter of law. He does not assert, for example, that Mr. Griffin's testimony is subject to the rule of cancellation, *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993), or that it is entirely irreconcilable with the physical evidence, *State v. Allen*, 259 S.W.3d 671, 679 (Tenn. 2008). As such, "the matter should be

The Defendant's arguments collectively amount to an invitation to reweigh the evidence and to disturb the jury's determinations on appeal. We respectfully decline to do so. *See State v. Murray*, No. M2021-00688-CCA-R3-CD, 2022 WL 17336522, at *5 (Tenn. Crim. App. Nov. 30, 2022) ("We must decline the defendant's invitation to reevaluate the credibility of the witnesses or to revisit inconsistencies in the testimony because both fall solely within the purview of the jury as the trier of fact."), *perm. app. denied* (Tenn. Mar. 8, 2023). As such, consistent with the settled standard of review, we credit the testimony of the State's witnesses, including Mr. Griffin, and resolve all conflicts in the State's favor. For the reasons given below, we conclude that a rational juror could find beyond a reasonable doubt the essential elements of attempted first degree murder and employment of a firearm during the commission of a dangerous felony.

## B. ATTEMPTED FIRST DEGREE MURDER

The jury found the Defendant guilty of attempted first degree murder involving serious bodily injury. As charged in this case, a person commits criminal attempt who, "acting with the kind of culpability otherwise required for the offense . . . [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" Tenn. Code Ann. § 39-12-101(a)(2) (2018); *State v. Wooten*, No. W2022-00315-CCA-R3-CD, 2022 WL 16919957, at *6 (Tenn. Crim. App. Nov. 14, 2022), *perm. app. denied* (Tenn. Mar. 8, 2023); (VI, 598-99). First degree murder is "[a] premeditated and intentional killing of another[.]" Tenn. Code Ann. § 39-13-202(a)(1) (2018). Our General Assembly has defined "premeditation" as being

> an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

Tenn. Code Ann. § 39-13-202(d) (2018) (subsequently redesignated). Like any other element of an offense, "the State must prove premeditation beyond a reasonable doubt." *Miller*, 638 S.W.3d at 159.

---

left for the jury to decide as the sole arbiter of credibility." *See State v. Hornsby*, 858 S.W.2d 892, 895 (Tenn. 1993).

The question of "[w]hether premeditation is present in a given case is a question of fact to be determined by the jury from all of the circumstances surrounding the killing." *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). Our supreme court has observed that a jury may consider the following non-exclusive factors to infer premeditation:

> (1) use of a deadly weapon upon an unarmed victim; (2) the particular cruelty of the killing; (3) declarations by the defendant of an intent to kill; (4) evidence of procurement of a weapon; (5) preparations before the killing for concealment of the crime; (6) calmness immediately after the killing; (7) a lack of provocation on the victim's part; and (8) a defendant's failure to render aid to a victim. Proof that establishes a motive for the killing is also a factor a jury may consider.

*McKinney*, 669 S.W.3d at 773 (citations omitted). "[I]n determining the existence of premeditation, the trier of fact 'may not engage in speculation.'" *State v. Reynolds*, 635 S.W.3d 893, 918 (Tenn. 2021) (quoting *State v. Jackson*, 173 S.W.3d 401, 408 (Tenn. 2005)). That said, "Tennessee cases have long recognized that premeditation may be proved by circumstantial evidence" because "premeditation involves the defendant's state of mind, concerning which there is often no direct evidence." *Davidson*, 121 S.W.3d at 614-15.

Finally, serious bodily injury is "not an element of attempted first degree murder," but it "must be put before the jury for sentencing purposes[.]" *Rogers v. State*, No. W2022-00019-CCA-R3-PC, 2022 WL 6957427, at *8 (Tenn. Crim. App. Oct. 12, 2022), *perm. app. denied* (Tenn. Feb. 9, 2023).[3] As charged in this case, the term "serious bodily injury" is defined as bodily injury that involves "(A) A substantial risk of death; (B) Protracted unconsciousness; (C) Extreme physical pain; (D) Protracted or obvious disfigurement; [or] (E) Protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(36)(A)-(E) (2018) (subsequently redesignated). And, the term "bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" *Id.* § 39-11-106(a)(3).

In this case, the record contains more than sufficient evidence from which a reasonable juror could conclude that the Defendant committed attempted first degree murder resulting in serious bodily injury. Viewing the evidence in a light most favorable

---

[3] As we have recognized, "when a victim of attempted first-degree murder suffers serious bodily injury as a result of the crime, a defendant is not eligible for release until he serves 85% of his sentence." *State v. Fouse*, No. W2021-00380-CCA-R3-CD, 2022 WL 6257349, at *5 (Tenn. Crim. App. Oct. 10, 2022) (citing Tenn. Code Ann. § 40-35-501(k)(5)), *no perm. app. filed*.

to the State, the proof shows that when Mr. Griffin arrived at the barbershop, the Defendant was next in line to have his hair cut. When the Defendant was called, he handed his weapon to the barber's cousin and sat in the chair. At that point, Mr. Griffin paid additional money to skip the line, and the Defendant got up and went outside with the barber's cousin.

A few minutes later, the Defendant came back into the barbershop with his weapon. Although Mr. Griffin pleaded with him not to shoot, the Defendant shot him in the chest at close range. The Defendant then left, but returned to the shop shortly thereafter to take Mr. Griffin's backpack. When the Defendant left a second time, he told the barber, "Don't snitch on me."

The Defendant did not attempt to help or render aid to Mr. Griffin, who was lying on the floor bleeding. The gunshot resulted in Mr. Griffin's being treated in an intensive care unit for three months on a ventilator. It also resulted in Mr. Griffin's developing a hernia that impaired his ability to work and lift heavy objects.

Under the deferential standard of review, we conclude that a reasonable juror could have found beyond a reasonable doubt that the Defendant attempted to kill Mr. Griffin with intent and premeditation and that Mr. Griffin suffered serious bodily injury. We respectfully affirm the Defendant's conviction for attempted first degree murder resulting in serious bodily injury.

## C. EMPLOYMENT OF A FIREARM DURING THE COMMISSION OF A DANGEROUS FELONY

The jury also found the Defendant guilty of employing a firearm during the commission of a dangerous felony. As charged in this case, it is an "offense to employ a firearm or antique firearm during the . . . commission of a dangerous felony." Tenn. Code Ann. § 39-17-1324(b)(1) (Supp. 2020). A "dangerous felony" is defined as including an "[a]ttempt to commit first degree murder, as defined in §§ 39-12-101 and 39-13-202." *Id.* § 39-17-1324(i)(1)(A). Our supreme court has recognized that the term "employ" means "to make use of." *State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014).

As discussed above, the evidence shows that the Defendant used a firearm in an intentional and premeditated attempt to kill Mr. Griffin. The proof shows that the Defendant was in possession of a firearm during his time at the barbershop and, after relinquishing it to the barber's cousin for a brief period, regained possession of the weapon before using it to shoot Mr. Griffin in the chest. Under the deferential standard of review, we conclude that a reasonable juror could have found the essential elements of this offense beyond a reasonable doubt. We respectfully affirm the Defendant's conviction for employing a firearm during the commission of a dangerous felony.

**CONCLUSION**

In summary, we hold that the evidence is legally sufficient to sustain the Defendant's convictions for attempted first degree murder resulting in serious bodily injury and employment of a firearm during the commission of a dangerous felony. Accordingly, we respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

8