IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 25, 2026

**STATE OF TENNESSEE v. JAYSHAWN EDWARD WILLIAMS**

**Appeal from the Criminal Court for Knox County**
**No. 125934   G. Scott Green, Judge**

_____

**No. E2025-00542-CCA-R3-CD**

_____

Jayshawn Edward Williams, Defendant, was convicted by a jury of second degree murder for the shooting death of Travis Brown in Knoxville. The trial court sentenced Defendant to a thirty-six-year sentence. After the denial of a motion for new trial, Defendant appealed, arguing that the evidence was insufficient to support the conviction because the proof did not establish his identity and because he acted in self-defense. Because we determine the evidence was sufficient to support the conviction, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Jackson M. Fenner, Knoxville, Tennessee, for the appellant, Jayshawn Edward Williams.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Jeannine Guzolek and Larry Dillon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On May 3, 2023, at around 2:45 p.m., two employees of Balter Beerworks in Knoxville were on a smoke break in a car in the parking lot of the restaurant. As they sat in the car smoking, they saw two men walk down a set of nearby steps that led to a gravel parking lot near Summit Towers. From their vantage point, the men appeared to be talking and laughing. When the men reached the bottom of the steps, they crossed the street and headed toward Broadway. One of the men was wearing a ball cap, and the other had his hair in "dreads or twists." One of the employees went back to work while the other finished

her cigarette. She heard a "couple of pops" before going back inside, but she thought the noise came from the train tracks nearby.

Knoxville 911 dispatchers received two calls around 2:56 p.m. to report a shooting. Specifically, the callers reported a man with a gunshot wound to the head lying on the sidewalk of the Broadway Bridge near Depot Avenue.

Officer Jason Kalmanek of the Knoxville Police Department was assigned to the central district including South Knoxville and downtown Knoxville on May 3, 2023. He received a "call that there was a shooting on the bridge just south of the mission." He responded to the call, and when he arrived at around 3:00 p.m., there were "a couple of bystanders on the east side sidewalk and then a body." Officer Kalmanek was accompanied by two other officers, including his sergeant and partner. They arrived at the scene at about the same time. Officer Kalmanek did not find a weapon or any shell casings. Travis Brown, the victim, was deceased. The victim died from a single gunshot wound to the head, likely from a .38 caliber revolver. The gun appeared to have been fired from between a few feet to a few inches away.

The victim had a cell phone in his right hand and a torn latex glove in his left hand. There was a second cell phone on the ground near the victim's right elbow, a piece of torn latex a few feet away in the street, and a ball cap about two feet away from the victim's head. A backpack was also next to the victim.

Surveillance footage from Balter Beerworks showed a red Jeep driving up Broadway toward the bridge in the direction of the crime scene at 2:55 p.m. The driver of the Jeep, Robert Keys, testified that he heard a loud noise as he was driving. He looked up and saw two people standing on the bridge. One person had the other person in a headlock. When the person released the person in the headlock, the man who was headlocked fell to the ground. Mr. Keys saw the person walk south wearing a blue jacket and black pants with a white stripe. The man was carrying a red bag on his right shoulder. The surveillance footage showed the Jeep pull away, and a person walked into the frame of the camera and walked east on Jackson before crossing the sidewalk and ascending a set of stairs up the side of the hill into a gravel lot near Summit Towers. Surveillance footage from Lincoln Memorial University Law School showed what appeared to be the same person walking south through the area down Summit Hill. Mr. Keys identified the man in the Lincoln Memorial University Law School footage as the same person he saw leave the scene of the shooting.

Surveillance footage from Ray's Market on Broadway near Depot Avenue showed a black Mercedes making a U-turn at the intersection of Broadway and Depot just before

3:00 p.m. The driver of the Mercedes, John Mitchell, explained that he heard a "couple of pops" as he approached the intersection. He turned around to avoid the "situation."

Kendra Caldwell, a nurse and employee of the Knoxville Area Rescue Mission, was driving behind Mr. Mitchell's Mercedes in her Lexus SUV that day. She saw the victim on the east side of the Broadway bridge fall to the ground. She drove to the victim, got out of her vehicle, and tried to help him. When she arrived at the scene, the victim's eyes were fixed and dilated, so she called 911. Ms. Caldwell did not see anyone else on the sidewalk.

Shortly after the shooting, a "be on the lookout" was issued for the man depicted in the surveillance footage. Officer Coleman Paul of the University of Tennessee Police Department recognized the red and blue jacket depicted in the footage. A few days earlier, Officer Paul was patrolling an area known as "the strip" on Cumberland Avenue between 17th and 22nd Street. He stopped a pair of jaywalkers. The encounter was captured on Officer Paul's body camera. One of the men was the same man that was depicted in the video. Officer Paul identified that person as Defendant at trial.

On May 10, 2023, Officer Anthony Brinkley of the Knoxville Police Department responded to a call of a disturbance at a Citgo gas station by an intoxicated man. When Officer Brinkley arrived at the gas station, he found Defendant, who appeared to be under the influence of narcotics, "laid out" next to the gas station. Defendant had outstanding warrants, so Officer Brinkley took him into custody. Defendant had a backpack with him at the time of his arrest. Inside the backpack, there was a receipt to a pawn shop. Officer David Ogle went to the pawn shop and reviewed the surveillance footage. In the footage, Defendant is depicted engaging in a transaction. The transaction took place on April 23, 2023. During the transaction, Defendant sold a birthstone ring for $100.

Defendant testified at trial that the victim and someone he knew as "Jas" were planning to "rob and kill" him. Defendant claimed that on the day of the victim's death, the men were on the bridge, and the victim robbed him of his backpack and held him at gunpoint. Defendant testified that the victim put the gun in the waistband of his pants to put on latex gloves. Defendant stated that he took the gun from the victim "off his waist" and immediately shot him. Defendant testified that he left the gun at the scene and that he saw "a person . . . coming down in all black" as he left the scene of the shooting. Defendant initially claimed that he did not know the victim was going to rob and kill him until they got to the bridge but later testified that before they walked to the bridge, he and the victim were at a house with ten people who had guns and would not let him leave. Defendant stated, "When they left, I left with [the victim] because he's supposed to finish the deed or whatever." Defendant insisted that the victim escorted him to the bridge at gunpoint. Defendant admitted on cross-examination that he cut his hair and fled to Nashville

immediately after he shot the victim. Defendant did not mention the ten armed people in his statement to police.

The jury found Defendant guilty as charged, and the trial court sentenced Defendant to an effective sentence of thirty-six years. Defendant appealed.

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to support his conviction for second degree murder. Specifically, he argues that the proof failed to establish his identity as the perpetrator of the offense and that he acted in self-defense. The State disagrees.

When examining whether the evidence presented at trial was sufficient to support a conviction, several well-settled principles guide our analysis. We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The defendant bears the burden on appeal to demonstrate that the evidence is insufficient to support his conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

"[A] jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The State is entitled on appeal to "the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Questions as to the credibility of witnesses and the weight of the evidence, as well as factual issues raised by such evidence, are resolved by the trier of fact, not this Court. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). These principles guide us "'whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Identity is an essential element of every crime. *State v. Bell*, 512 S.W.3d 167, 198 (Tenn. 2015). The State has the burden to prove the identity of the defendant. *State v.*

*Sneed*, 908 S.W.2d 408, 410 (Tenn. Crim. App. 1995). The identification of the perpetrator of a crime is a question of fact for the jury. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005), *abrogated on other grounds by State v. Miller*, 638 S.W.3d 136, 150 (Tenn. 2021). In resolving questions of fact, such as the identity of the perpetrator, "'the jury bears the responsibility of evaluating the conflicting evidence and accrediting the testimony of the most plausible witnesses.'" *State v. Pope*, 427 S.W.3d 363, 369 (Tenn. 2013) (quoting *State v. Hornsby*, 858 S.W.2d 892, 897 (Tenn. 1993)). Circumstantial evidence may establish identity. *Bell*, 512 S.W.3d at 198-99 (concluding circumstantial evidence that the defendant was the perpetrator was sufficient to uphold the verdict). Second degree murder is the "knowing killing of another." T.C.A. § 39-13-210(a)(1). A person acts "knowingly . . . when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b).

Defendant argues on appeal that "[b]ecause the evidence was insufficient to prove that [Defendant] killed [the victim] at the close of the State's proof, the trial court erred by denying the [motion for judgment of acquittal]." This is not a correct statement of the law. Because Defendant chose to offer proof after the denial of the motion for judgment of acquittal, our review includes not only the State's proof, "but must also necessarily include proof offered by the defendant." *State v. Gilley*, 297 S.W.3d 739, 763 (Tenn. Crim. App. 2008).

Here, Defendant is insistent that because there was no eyewitness that identified him as the shooter, the evidence is insufficient. As stated above, eyewitness testimony is not necessary. Identity can be established by circumstantial evidence alone. Surveillance footage and testimony from an employee of Balter Beerworks established that Defendant walked from Summit Towers with the victim toward the bridge just moments prior to the victim's death. Additional surveillance footage showed Defendant walking back toward the direction from which he came moments after the murder. Moreover, Defendant admitted that he shot the victim. While Defendant claimed self-defense, he certainly placed himself at the scene of the murder with the gun in his hand. The evidence was sufficient to establish Defendant's identity as the perpetrator of the crime. Further, the jury was well within its purview to reject Defendant's self-defense claim. *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997) (citing *State v. Iby*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993)). The only evidence that Defendant acted in self-defense was his own testimony. The jury, by its verdict, did not believe Defendant's testimony. We will not reweigh this decision. Plus, even if the jury believed Defendant's version of the events, the jury could have still rejected Defendant's self-defense claim because his testimony was that he took the gun from the victim's waistband and shot the victim in the head. Thus, by Defendant's own account there was no immediate threat that required him to use deadly force. Finally, Mr. Keys, who witnessed the shooting, testified that the shooter had the

victim in a headlock immediately before the shots were fired.  The evidence is sufficient to support the verdict.  Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_S/Timothy L. Easter_
TIMOTHY L. EASTER, JUDGE